UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PERCY COLEMAN, | ) | |
| | ) | Case No. 19 C 3789 |
| Plaintiff, | ) | |
| | ) | District Judge: Edmond E. Chang |
| v. | ) | |
| | ) | Magistrate Judge: Gabriel A. Fuentes |
| STATE OF ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In a six-count First Amended Complaint (D.E. 27), Plaintiff Percy Coleman ("Plaintiff") is a former Illinois Department of Corrections parole commander who has sued the State of Illinois, the Illinois Department of Corrections ("IDOC"), and four supervisory-level IDOC employees (collectively, "Defendants") for race discrimination, age discrimination, and retaliation for exercising protected First Amendment rights and for complaining about the race and age discrimination to which he claims he was subjected. Plaintiff alleges multiple causes of action under the state and federal constitutions, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, the federal Age Discrimination in Employment Act, and the Illinois Human Rights Act. In January 2020, defendants filed a partial motion to dismiss the First Amended Complaint (D.E. 29), and on March 20, 2020, the district court entered an order stating that with the partial motion to dismiss pending, "it seems to make sense to start discovery on the Title VII race and the ADEA claims against IDOC." (D.E. 40.) The parties served their Mandatory Initial Discovery Program disclosures in June 2020, and as the pandemic conditions in the United States complicated the business of litigating and adjudicating civil matters, orders were entered culminating in a discovery schedule calling for written discovery to be answered on or before August 27, 2020, for fact

discovery to close on March 31, 2021, and for expert discovery to close on or before April 30, 2021 (D.E. 57). This matter is before the magistrate judge on a discovery supervision referral, which includes the motion now before the Court: the Defendants' Motion for a Protective Order To Prevent Plaintiff Seeking Premature and Irrelevant Depositions and Documents ("Mot."; D.E. 62), a request for a protective order to block Plaintiff from taking three third-party depositions that Defendants say are beyond the scope of permissible relevancy under Federal Rule of Civil Procedure 26(b)(1).

## INTRODUCTION

Plaintiff, an African-American who was 77 at the time of the First Amended Complaint, alleges that defendants treated him less favorably than similarly situated non-Black, younger parole commanders and that he was eventually terminated in retaliation for his having complained about his mistreatment, and for his involvement in union-organizing activities he asserts were protected by the First Amendment. (D.E. 27 ¶¶ 33-34.) In or about early September 2020, Plaintiff noticed the depositions of three third-party witnesses: Natasha Jenkins, Rodger Heaton and Chris Higgerson. (Mot. ¶¶ 6-7 & n.1.)[1] In the subpoenas, Plaintiff also seeks "[a]ll documents and communications relating to the Labor and Employment Advisory Division, AFSCME Council 31, Local 3436, and the Illinois Department of Corrections for the period January 1, 2015 to January 20, 2019." (Id. ¶ 8.) Defendants move for a protective order barring the depositions and document discovery, on essentially the following grounds:

- Witnesses Heaton and Jenkins are not and never were IDOC employees; Higgerson is a former IDOC employee; and any information Plaintiff seeks from them dating back to 2015 "has no bearing on this discrete employment issue that Plaintiff contends [in the First Amended Complaint] took place in 2017-18." (Id. ¶¶ 14-19.) Moreover, "there are no

---

[1] Initially, these depositions were noticed for late September 2020. At hearing on the Motion, Plaintiff's counsel represented that the notices were being withdrawn pending further conferences with defense counsel and with the benefit of the Court's ruling on the Motion.

allegations [in the First Amended Complaint] that any of them was involved in the alleged events described in Plaintiff's Amended Complaint. (*Id.* ¶ 13.)

- Plaintiff did not mention these witnesses' names in his interrogatory answers and initial disclosures. (*Id.* ¶¶ 16, 18.)

- The three prospective witnesses "are not parties to this lawsuit, no Answer has yet been filed, and ... Plaintiff has made no showing that any of these individuals possess[es] information that bears any relation to any of the allegations contained in his Amended Complaint." (*Id.* ¶ 21.)

- Defendants are concerned that Plaintiff wants the information for use in a separate lawsuit in which fact discovery is now closed. (*Id.* ¶ 20.)

At hearing on the Motion, defense counsel added that the names of witnesses have not appeared in discovery thus far provided by Plaintiff, although Plaintiff's counsel did not disagree that such discovery was not complete. Moreover, Plaintiff's counsel argued that Heaton was a liaison to the then-Illinois Governor Bruce Rauner and discussed with the governor a plan to institute various administrative measures to reduce or eliminate unionized corrections positions, whereas Jenkins and Higgerson were tasked with developing or implementing Rauner Administration "management rights restoration" plans including steps to remove corrections officials who were deemed by the Administration to have unionized unlawfully. Although the information Plaintiff argues to be within the knowledge of these witnesses seems at least somewhat attenuated from the race and age discrimination claims, Plaintiff's counsel argued that the defendants' alleged discrimination against Plaintiff is conceptually difficult to separate from the management initiatives linked directly to the Rauner Administration's union agenda.[2] In addition,

---

[2] The magistrate judge also notes that his authority to manage discovery under referral from the district court is broad, *see Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013), and here, the district court's comment about commencing the discovery with the Title VII and ADEA claims occurred six months ago, during a pandemic, and with a fact discovery period set to close on March 31, 2021. The Court sees no reason why deposition discovery on matters broader than the race and age discrimination claims should not start sooner rather than later, although as discussed further below, the parties will have an opportunity to confer about deposition scheduling and sequencing.

3

Plaintiff's counsel admitted that the state of Plaintiff's written discovery responses (including the interrogatory answers and initial disclosures that, as Defendants point out, make no mention of Heaton, Jenkins or Higgerson) is inchoate and in need of attention by counsel for both parties to ensure, for example, that Defendants have received all of Plaintiff's responsive, non-privileged documents. Those documents are said by Plaintiff to include a slide show which Plaintiff told the Court contained the names of some or all of the three witnesses at issue in the motion and demonstrated their involvement in what Plaintiff describes as a management scheme to retaliate against Plaintiff. At hearing, Defendants did not argue that conducting these depositions posed any special or undue burden on Defendants or were not proportional to the needs of the case, other than to argue generally that time and resources spent on irrelevant discovery is also not proportional.

## DISCUSSION

The Court offers no opinion at all about whether any of Plaintiff's allegations about these three witnesses is true or can be proved, but the question presented by Defendants' motion is much narrower: Should the Court bar the depositions based on Defendants' assertions that Plaintiff has failed to establish that the deponents have relevant information? As a preliminary matter, the party seeking protection from discovery has the burden of presenting "a particular and specific demonstration of fact" as to the need for such protection. *City of Rockford v. Mallinckrodt ARD, Inc.*, Nos. 17 CV 50107, 20 CV 50056, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). "A strong showing is required before a party will be denied entirely the right to take a deposition." *Id.* (citing *Nucap Indus., Inc. v. Robert Bosch LLC*, No. 15 C 2207, 2017 WL 6059770, at *4 (N.D. Ill. Dec. 7, 2017)). "[C]ompletely prohibiting a deposition is an extraordinary measure." *Nucap*, 2017 WL 6059770, at *4. Our

4

court of appeals instructs that before restricting discovery, we should consider the totality of the circumstances, "weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotations omitted). The motion for a protective order barring these three depositions might seem like a relatively routine discovery motion, and in many ways it is. But the motion's focus on the claimed irrelevancy of the depositions also allows us to take a closer look at what relevance means in the context of Federal Rule of Civil Procedure 26(b)(1), and at Defendants' heavy reliance on one recent case, *DeLeon-Reyes v. Guevara*, Nos 18 C 1028, 2312, 2020 WL 3050230 (N.D. Ill. June 8, 2020), as authority for preclusion of the three depositions.

## I.      Relevance as a Component of Rule 26(b)(1) Discoverability

The starting point for the Court's analysis of whether the Heaton, Jenkins and Higgerson depositions may proceed is Rule 26(b)(1), which "allows the parties to engage in broad, liberal discovery" regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Ye v. Cliff Veissman, Inc.*, No. 14 C 1531, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016). The 2015 amendments to Rule 26 "subtly narrowed the concept of relevance for purposes of discovery" because the amendments jettisoned language tying the concept of relevance to "the subject matter of the case," *id.*, and they eliminated from the rule the language making information discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." *See* Advisory Committee Notes to the 2015 Amendment to Rule 26 of the Federal Rules of Civil Procedure. Relevance, for discovery purposes, is now gauged in relation to claims or defenses in the action. But the rule itself offers no further definition

of relevance, except perhaps to distinguish it from admissibility, in that the information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Rules of Evidence define relevant evidence as that which has any tendency to make a fact of consequence (in determining the action) "more or less probable than it would be without the evidence." Fed. R. Evid. 401. We know that "[a]ll that Rule 401 requires is minimal logical relevancy; the item of evidence need not, by itself, persuade the trier of fact or be sufficient to persuade the trier of fact, that the fact to be inferred is more probably true than not true." Michael H. Graham, *Modern State and Federal Evidence: A Comprehensive Reference Text*, Vol. I at 13 (NITA 1989). As proof of such a fact, "[e]vidence is relevant if as a matter of logic, experience, and accepted assumptions concerning human behavior" it possesses any tendency to make the existence of that fact more or less probable than it would otherwise be. *Id.* at 9. Comparing the language of the two rules side by side, one clue about the meaning of relevance under Rule 26(b)(1) may be found in that rule's use of the word "information" where Rule 401 refers to "evidence." *See* Fed. R. Civ P. 26(b)(1) ("Information within the scope of discovery need not be admissible in evidence to be discoverable.").

This subtle difference between "information" and "evidence" in the language of the two rules has come up in decisions that have seen the distinction as indicating a greater breadth of relevance in the discovery setting. "Because discovery is concerned with 'relevant information' not 'relevant evidence' the scope of relevance for discovery purposes is necessarily broader than it is for trial evidence under Federal Rule of Evidence 401." *Doe v. Loyola University Chicago*, No. 18 C 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting *Martinez v. Cook Cty.*, No. 11 C 1794, 2012 WL 6186601, at *2 (N.D. Ill. Dec. 12, 2012)). In the discovery context, "[b]ecause the purpose of discovery is to help 'define and clarify the issues,' relevance is to be

6

construed broadly." *Id.* at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "'If relevance is in doubt, courts should err on the side of permissive discovery.'" *Id.* (quoting *Wiginlon v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004)); *see also Sailsberry v. Village of Sauk Village*, No. 15 C 10564, 2020 WL 5570091, *2 (N.D. Ill. Sept. 17, 2020) ("Relevance for purposes of Rule 26(b)(1) is very broad, and the Court should be permissive when considering relevance objections.") (citing *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Center Props., Ltd.*, No. 02 C 8133, 2003 WL 145419, at *3 (N.D. Ill. Jan. 21, 2003)).

In addition, the difference between information that is discoverable under Rule 26(b)(1) and that which is admissible under Rule 401 – and other rules of evidence – informs the scope of relevance as that word is used in Rule 26(b)(1). One court informatively differentiated Rule 26(b)(1) relevance from relevance under Rule 401 by drawing a Venn diagram, showing Rule 401 relevance as a circle within a larger circle representing relevance under Rule 26(b)(1). *See Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 519-20 (N.D. Ill. 2018). Some evidence, then, will be outside the realm of admissibility but within the realm of discoverability. Perhaps it is possible to imagine some piece of information that is relevant to a claim or defense but not to an evidentiary fact of consequence in determining the action. But the easier route to understanding the difference between admissible evidence and discoverable information lies in the structure of the rules and the fact that Rule 26(b)(1) is, after all, a civil discovery rule. First, a civil litigant is permitted by Rule 26(b)(1) to learn information that is "relevant" to a claim or defense.[3] Second, having learned that information, our litigant may attempt to offer it into evidence, and the adversary may oppose admission. The information, or the evidentiary form it takes (the testimony of a witness, the contents of a documentary exhibit, or admissions made in the pleadings or in

---

[3] The concept of proportionality was added to the rule in 2015, but proportionality is not center stage in the litigation of the instant Motion. Relevancy is.

7

written discovery) might be inadmissible because admission carries a risk of unfair prejudice that substantially outweighs probative value, or of improperly placing character and propensity before the fact-finder. *See* Federal Rules of Evidence 403, 404(b). The natural tendency of courts is to allow the civil litigant to discover information that is broadly "relevant," even if there may be a strong argument against its admissibility.

In *Doe*, for example, a Title IX gender discrimination case, the magistrate judge granted a motion to compel the university to produce documents related to the university's implementation of its sexual misconduct policy dating back four years earlier than the time frame the university believed relevant. 2020 WL 406771, at *1. The court reasoned that plaintiff showed that his requested discovery was relevant to his claim that the university's conduct was part of a pattern and practice over time, even if some of the information might later turn out to be inadmissible. *Id.* at *3-4. "Whether the documents Doe seeks from 2009 to 2013 [–] or those that Loyola already produced from 2013 to the present, for that matter - ultimately will be admissible at trial is a separate question the Court need not, and cannot, decide at this early stage." *Id.* at *3.

In the discovery context, courts generally apply what Professor Graham described as "logic, experience. and accepted assumptions about human behavior" to decide what Rule 26(b)(1) allows litigants to learn in the first instance. The nature of all of these determinations will be individual, tailored to the factual settings in which they arise, and rooted deeply in the experience of individual judges and their ability to parse facts. "Law is not logic but experience, as Holmes famously put it. And experience is the domain of fact, and so the realist has a much greater interest in fact than the formalist, and in 'fact' in a richer sense than what a judge can glean from a trial transcript." Richard A. Posner, *Reflections on Judging* 6 (Harvard Univ. Press 2013); *see also* Edmond Cahn, *Jerome Frank's Fact-Skepticism and Our Future*, 66 Yale Law J. 824, 825 (1957)

(discussing realist scholar Jerome Frank's conception of "fact skepticism" as a theory for explaining how judges resolve factual disputes based upon their experience and unique reactions to the conflicting evidence). So although Defendants have broadly cited *DeLeon-Reyes v. Guevara* and its "finding that the 'four nonparty subpoenas [in that case] seek irrelevant information'" in support of their requested protective order, Mot. at 5, more discussion is warranted about that case and about the individualized nature of relevancy determinations at the discovery stage.

## II. *DeLeon-Reyes* and the Court's Individualized Determination of Rule 26(b)(1) Relevancy

In *DeLeon-Reyes*, the magistrate judge granted a protective order barring the service of third-party subpoenas in federal civil rights lawsuits by two men who claimed that Chicago police officers, including one Reynaldo Guevara, coerced confessions, fabricated evidence, and committed other federal constitutional due process violations that resulted in plaitiffs' wrongful convictions for a 1998 double murder. *DeLeon-Reyes*, 2020 WL 3050230, at *1, 5. The court focused on whether the subpoenas could be said to have sought information relevant to the claims and defenses in the action. *Id.* at *5. Three subpoenas on the Cook County State's Attorney's Office, the Federal Bureau of Investigation, and the U.S. Attorney's Office sought information that could connect Guevara to other officers who had been prosecuted or otherwise implicated in a wide-ranging corruption scheme, including a former officer named Joseph Miedzianowski. *Id.* at *6. 11. Plaintiffs presented evidence that they said demonstrated that Guevara participated in the police corruption conspiracy for which Miedzianowski and another officer, John Galligan, were prosecuted along with numerous others. *Id.* at *6-7. Guevara was not prosecuted as a result of that investigation. The magistrate judge examined that evidence and determined that it did not connect Guevara to Miedzianowski and Galligan, or at least not to a sufficient degree to make relevant (for discovery purposes) the law enforcement agencies' communications or investigative

9

materials about Miedzianowski as those materials might relate to Guevara's connections to the Miedzianowski investigation. *Id.* at *6-7. The magistrate judge reasoned further that Rule 404(b) could play a role in a Rule 26(a)(1) relevancy determination, insofar as Guevara's supposed connections to Miedzianowski, or Guevara's alleged bribery and drug activities, if they could be proved, were not sufficiently similar to the misconduct alleged against Guevara in the lawsuit, and that those connections would not demonstrate an intent, opportunity, preparation or plan to frame plaintiffs for murders they did not commit. *Id.* The result in *DeLeon-Reyes* was that plaintiffs were not permitted discovery into the possibility of connections between Guevara and the other corrupt officers, based on the magistrate judge's individualized determination that plaintiffs' proffered evidence did not establish that this information was relevant enough to be discovered.

It is not difficult to imagine different outcomes under analyses of different fact patterns by different magistrate judges considering protective order motions to preclude discovery. In *Wrice v. Burge*, No. 14 C 5934, 2016 WL 6962838 (N.D. Ill. Nov. 29, 2016), another federal civil rights lawsuit alleging police misconduct and wrongful conviction, the officer defendants wanted discovery into the work that third-party journalism students and their former professor had done, not only with respect to the underlying murder prosecution of the plaintiff, but also with respect to allegations against the third parties in other investigations they conducted. *Id.* at *5-6. The officer defendants had attacked the veracity of affidavits the third parties obtained, indicating the plaintiff's innocence in the underlying murder prosecution, and the Court agreed that "the procurement of similar affidavits in other cases is relevant and discoverable here, because it potentially bears on the methods used to procure affidavits" from the witnesses in plaintiff's case. *Id.* at *5. Many of the allegations against the third parties in other cases were made in a different lawsuit filed by a different plaintiff who alleged the professor's involvement in procuring his

10

allegedly false confession. *Id.*[4] The allegations, noted by the court to be unproved, were nonetheless sufficient for the court to permit the officers their requested discovery into those allegations, based on a theory that they were relevant to claims that the third parties "have a playbook for getting false affidavits, and that they used it to procure false affidavits" in the plaintiff's case. *Id.* at *6. The court also made short work of one third party's argument that even if the allegations were true, they would not be admissible in plaintiff's case: "[A]gain, admissibility is not a prerequisite to discovery." *Id.*

The different outcomes and different analyses in *DeLeon-Guevara* and *Wrice* demonstrate that litigants should tread cautiously before placing too much stock in any one decision hinging on a magistrate judge's individualized, fact-skeptical examination of whether certain information sought to be discovered in a case should be off-limits for failure to meet the broad relevancy standard of Rule 26(b)(1). Each of these cases should turn on the magistrate judge's discretion in determining whether the facts as proffered support discoverability under the broad conception of relevancy in Rule 26(b)(1).

Here, Plaintiff wants information about what role the alleged effort to reduce union membership in the ranks of parole commanders at IDOC played in the race and age discrimination he claims, as well as in his First Amendment claims rooted in his union activities. The Court struggles with the idea that such information from Heaton, Jenkins and Higgerson has no bearing on any of Plaintiff's claims, including the First Amendment retaliation claims. But as we have said, the bar for precluding depositions is high, and Plaintiff has asserted a basis to believe that witnesses Heaton, Jenkins and Higgerson have at least some information relevant to how IDOC

---

[4] Defendants have expressed a concern that Plaintiff wants this discovery for use in a separate matter in which discovery already has closed. The confidentiality order already in place in this case (D.E. 61) already bars any evidence designated as "confidential" in this matter from being used or disclosed "for any purpose whatsoever other than in this litigation." Confidentiality Order ¶ 5(a).

treated Plaintiff relative to other parole commanders, and possibly why. Defendants have not carried their burden of making a particular and specific factual showing that these depositions should not proceed, insofar as Defendants argue little more than that Plaintiff has not adequately mentioned the deponents in his pleadings or his discovery disclosures so far in the case, and that the Court has the discretion to bar the depositions in the same way discovery was limited in *DeLeon-Reyes*. The information to which these deponents testify might well turn out to be inadmissible, but the greater breadth of relevance for Rule 26(b)(1) purposes allows Plaintiff, for now, to *discover* what the information is. Moreover, this Court is choosing not to engage in an admissibility analysis to determine whether the information is discoverable under Rule 26(b)(1).

## CONCLUSION

For the foregoing reasons, Defendants' motion for a protective order precluding the depositions and document subpoenas of third-party witnesses Heaton, Jenkins and Higgerson is denied. Plaintiff appropriately withdrew the late-September deposition dates for these witnesses, giving the parties time to confer under Rule 26(f) about the sequencing of the depositions and the supplementation of Plaintiff's written discovery responses in this matter. Counsel for the parties should promptly confer and then file a written joint status report about those discussions no later than 5 p.m. on October 16, 2020.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: September 25, 2020**

12