UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Percy Coleman, ) | |
| ) | |
| Plaintiff, ) | No. 19-cv-03789 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| State of Illinois, Illinois Department of ) | |
| Corrections, Deputy Chief Thomas Hilliard, ) | |
| Deputy Chief Deon Dixon, ) | |
| Chief Jason Garnett, and ) | |
| Acting Director John Baldwin, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER AND OPINION**

Percy Coleman brings this employment discrimination case against the Illinois Department of Corrections (IDOC), as well as several of his supervisors at the IDOC.[1] R. 27, Am. Compl.[2] Coleman alleges that he was discriminated against because of his race, age, and union membership, and also that he was retaliated against for complaining about the alleged discrimination. Specifically, Coleman brings three claims against the IDOC and the State of Illinois: a race-discrimination and hostile work environment claim under Title VII, 42 U.S.C. § 2000e *et seq.* (Count 1); a retaliation claim under the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* (Count 2); and an age-discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 (Count 4). Coleman also asserts five claims against

---

[1]The Court has federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]Citations to the record are noted as "R." followed by the docket number, and when necessary, the page or paragraph number.

four of his supervisors, Thomas Hilliard, Deon Dixon, Jason Garnett, and John Baldwin: a First Amendment and Due Process claim under 42 U.S.C. § 1983 (Count 3); a retaliation claim under Article 1, Section 2 and Article 1, Section 4 of the Illinois Constitution (Count 5); a race-discrimination claim under 42 U.S.C. § 1983 (Count 6); and a retaliation claim under 42 U.S.C. § 1983 (Count 7).[3]

The Defendants have now filed a motion to dismiss some of the claims. R. 29. For the reasons explained below, the partial motion to dismiss is granted.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Percy Coleman is a 77-year old African-American man who has worked for the Illinois Department of Corrections since 2001. Am. Compl. ¶¶ 5-6, 16. At the time of the relevant events, Coleman was employed as a Parole Commander. *Id*. ¶ 38. Coleman also served as the President of his union, AFSCME Council 31, Local 3436. *Id*. ¶¶ 19, 40.

Coleman alleges that his supervisors—Deputy Chief Thomas Hilliard, Deputy Chief Deon Dixon, and Chief of Parole Jason Garnett—as well as John Baldwin, the Acting Director of the IDOC, have "waged a war" against him since June 2017. Am. Compl. ¶ 57. Each of these individuals, Coleman argues, "created a discriminatory and hostile work environment" for him. *Id*. ¶ 23.

---

[3] The final three claims are numbered incorrectly in the Amended Complaint. Currently, they appear as Counts 4, 5, and 6. But right before that, the ADEA claim against the IDOC and State is also listed as Count 4. So the Court will refer to the three final claims as Counts 5, 6, and 7.

The Amended Complaint does not tell a straightforward story about what happened to Coleman, nor is the timeline of events clear from the allegations. In general, though, Coleman alleges that each of the four supervisors "was responsible for the suspension and termination" of Coleman. Am. Compl. ¶¶ 29-32. He goes on to list what he describes as 10 examples of discriminatory actions, and he essentially copies and pastes that list for each supervisor. *Id.* These examples include: failing to properly investigate Coleman's claims of discrimination, harassment, and retaliation; denying Coleman and other union members "meaningful disciplinary hearings"; imposing "arbitrary and unreasonable duties" on Coleman and others based on race; refusing to provide training, covered up the "failings" of the IDOC administrative staff; and terminating older employees in favor of younger employees. *Id.*

Coleman also alleges that he "was subject to a series of disciplinary measures designed and intended to harass and retaliate against him for complaining about illegal activity of his superiors, harassment of his co-workers and peers, complaints of racial discrimination and retaliation for the exercise of his First Amendment rights relating to his association with a labor union." Am. Compl. ¶ 34. It is not clear to whom Coleman made complaints, but the content of his complaints apparently covered topics like the IDOC's discriminatory treatment of employees, the IDOC's "scheme" to punish union members, and the IDOC's endangerment of the public. *Id.* ¶ 39.

It is also not clear what "disciplinary measures" Coleman was subjected to, but at the very least, he is challenging both his suspension and his termination.

3

Specifically, Coleman alleges that he was fired as a "result of five Employee Review Hearings, all held consecutively on February 8, 2018." Am. Compl. ¶ 41. These five employee review hearings in turn apparently stemmed from five infractions allegedly committed by Coleman between September 2017 and December 2017. *Id.* ¶ 42. The Amended Complaint suggests that Coleman disagrees with the validity of the underlying allegations for the five review hearings—Coleman alleges, for instance, that he: (1) "provided an explanation for why the offenders on the list that was sent by Deputy Chief Dixon had not been seen and did not fail to follow the written direction given to him by his direct Supervisor," (2) "provided valid concerns regarding the policy concerning scheduling District One Parole Agents for late night shifts," (3) "made himself available during work hours" and "did not use any time during his work day for union activity on October 26, 2017," (4) "called and left a message for his direct supervisor Deputy Chief Deon Dixon…when he went home sick on December 1, 2017," and (5) "directed Parole Agent Omar Rashad to submit a Parole Violation Report and prepare a Notice of Charges regarding Offender Jerimea McGhee's warrant that was issued on December 7, 2017." *Id.* ¶¶ 44-48. It appears that at least two of these hearings were initiated by Hilliard, but that Dixon, Garnett, and Baldwin each knew that Hilliard's allegations against Coleman were "false and fraudulent." *Id.* ¶¶ 53-56.

In any event, the five hearings happened in February 2018, and presumably at some point after the hearings (the Amended Complaint does not specify when), Acting Director Baldwin suspended Coleman for five days. Am. Compl. ¶ 50.

According to Coleman, he "was denied any meaningful hearing on disciplinary complaints, was denied the ability to learn of the extent of the allegations against him, was denied the ability to call witnesses and was denied the ability [to] speak on his own behalf or with the assistance of counsel." *Id.* ¶ 49.

After that, the Amended Complaint refers to a "hearing conducted by the Illinois Civil Service Commission over the course of six months." Am. Compl. ¶ 61. And during that six-month hearing, Coleman alleges, "the Illinois Civil Service Commission prevented the admission of evidence pertaining to the Defendants' illegal acts of discrimination, retaliation, motivation of the Defendants, the Defendants' discriminatory and illegal actions," among other allegations against the Defendants. *Id.* ¶ 62. As a result of that next layer of review, in January 2019, Coleman was fired. *Id.* ¶ 63 Coleman maintains that the underlying allegations of rule violations were "meritless" and that the Defendants "knew well that those allegations were meritless." *Id.* ¶ 64.

Coleman now brings a series of claims against the IDOC and the State of Illinois, as well as against Hilliard, Dixon, Garnett, and Baldwin. Specifically, he asserts claims against the IDOC and the State under Title VII, the IHRA, and the ADEA (Counts 1, 2, and 4). And against Hilliard, Dixon, Garnett, and Baldwin, he asserts several 42 U.S.C. § 1983 claims and a claim under Article 1, Section 2 and Article 1, Section 4 of the Illinois Constitution (Counts 3, 5, 6, and 7). The Defendants have moved to dismiss substantial parts of these claims. R. 29.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

The Defendants make several arguments in support of their partial motion to dismiss. First, they argue that the State of Illinois should be dismissed as a defendant, and that the IHRA claim is barred by sovereign immunity. The Defendants also seek to dismiss the requests for certain damages against the IDOC and the State. As for the claims against the individual supervisors, the Defendants argue that the Section 1983 claims against Baldwin and Garnett should be dismissed for lack of personal involvement, and that the due process claims should be dismissed entirely. The Defendants finally challenge the claims under the Illinois Constitution against all of the individual Defendants. For the reasons explained below, the partial motion to dismiss is granted.

### A. Claims Against Illinois and IDOC

### 1. Illinois as a Defendant (Counts 1 and 4)

First, the Defendants seek to dismiss the State of Illinois as a party to the Title VII claim and the ADEA claim on the basis that the State does not count as an "employer" for purposes of those statutes. R. 30, Def. Br. at 3-4. In this case, the Defendants are right. Although the Eleventh Amendment does not bar Title VII suits against states, the term "employer" in that context "is understood to mean the particular agency or part of the state apparatus that has actual hiring and firing responsibility." *Hearne v. Board of Educ. of City of Chicago*, 185 F.3d 770, 777 (7th Cir. 1999). And that definition, the Seventh Circuit held, generally excludes "the State of Illinois as a whole." *Id.* The same definition presumably applies to the ADEA.

7

*E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-80 (7th Cir. 1995) ("The ADA's definitions of 'employer' mirrors the definition of 'employer' in Title VII of the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act.") (cleaned up).

Coleman's only response to this argument is that the IDOC "is a state agency that maintains and administers correctional institutions for the State of Illinois" and is run by the State of Illinois. R. 34, Pl. Resp. Br. at 3-4. But Coleman fails to describe how the State of Illinois is *directly* responsible for the actual hiring and firing of IDOC employees, as outlined in the definition of "employer" provided by the Seventh Circuit in *Hearne.* 185 F.3d at 777. So, here, the Court concludes that the proper target of the employment-discrimination suit is the IDOC, not the State of Illinois, and the Title VII and ADEA claims against the State are thus dismissed with prejudice. (The dismissals are with prejudice because Coleman has already amended his complaint once, not to mention the fact that he initially missed the deadline to file the Amended Complaint by nearly two months. R. 23.)

### 2. IHRA (Count 2)

The Defendants next argue that the IHRA claim should be dismissed entirely as barred by sovereign immunity. Def. Br. at 4-5. Coleman concedes that the IHRA claim is barred by sovereign immunity. Pl. Resp. Br. at 4. Both parties are correct. *See* 745 ICLS 5/1. So that claim is also dismissed with prejudice.[5]

---

[5] The Defendants suggest that the IHRA claim was brought "against all Defendants," Def. Br. at 2, but the Amended Complaint clearly only alleges the IHRA claim against the IDOC and the State of Illinois, Am. Compl. at 15. So, for the sake of precision, the Court's decision on this claim only applies to the IDOC and State of Illinois.

8

### 3. Damages

Finally, on the claims against the state entities, the Defendants seek to strike Coleman's request for punitive damages under Title VII, as well as the request for emotional distress and punitive damages under the ADEA. Def. Br. at 8-9. Coleman does not object to either request. Pl. Resp. Br. at 10. So the requests for punitive damages and emotional distress damages will be dismissed.

### B. Claims Against Supervisors

### 1. Personal Involvement of Baldwin and Garnett (Counts 3, 6, and 7)

Turning next to the claims against the individual supervisors, the Defendants first seek to dismiss Acting Director Baldwin and Parole Chief Garnett from the Section 1983 claims (Counts 3, 6, and 7). Def. Br. at 5-6. According to the defense, Coleman has failed to allege how Baldwin and Garnett were personally responsible for any constitutional deprivations in this case. *Id.* at 5. The Court agrees.

To successfully state a viable Section 1983 claim against an individual defendant, Coleman must allege "personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up). *See also Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). To be sure, the bar at the pleading stage for employment discrimination claims is not high, and Coleman need not offer evidence or even detailed facts to support his claim. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081

9

(7th Cir. 2008). But for the Section 1983 claims to survive a motion to dismiss, Coleman must at least provide at least some basic information about what Baldwin and Garnett *did*, beyond the conclusory allegation that they were somehow "responsible" for his suspension and termination. Am. Compl. ¶¶ 29-30. Same goes for the claim that they "created a discriminatory and hostile work environment." *Id*. ¶ 23. How did they personally create that environment? What actions did they themselves take?

Coleman does list ten so-called examples of discriminatory actions that Baldwin and Garnett each allegedly took, but even the gentlest scrutiny reveals that the list sheds no real light on the personal-involvement question. For one, it is clear that Coleman simply copied and pasted the same list of allegations for purposes of trying to state a claim against all four supervisors, and it is just not plausible that all four supervisors did the exact same things to the exact same degree. For example, Coleman alleges that both Baldwin and Garnett (not to mention Hilliard and Dixon) took actions to terminate older workers in favor of younger workers. *Id*. ¶¶ 29-30. But what does that mean? *Who* actually terminated older workers? What sorts of "actions" did the various supervisors take? Similarly, Coleman alleges that both Baldwin and Garnett (and Hilliard and Dixon) denied him "meaningful disciplinary hearings." Again, what does this mean? *How* did Baldwin and Garnett each "deny" Coleman a meaningful hearing? What actions did each of them take?

More importantly, the allegations themselves are highly conclusory and are thus not helpful in establishing personal involvement. For example, Coleman alleges

10

that Baldwin and Garnett each refused to provide training, retaliated against Coleman for speaking out about working conditions, imposed arbitrary and unreasonable duties on union members based on race, and took actions to interfere with Coleman's union association. Am. Compl. ¶¶ 29-30. These words have very little concrete, factual content. What does "took actions" mean, for instance? Similarly, it is not enough to make out a retaliation claim against the Defendants simply by alleging that they "retaliated" against him. The same goes for Coleman's more general allegation that Baldwin and Garnett "waged war" against him. *Id.* ¶ 57. In short, Coleman fails to allege that Baldwin and Garnett specifically played any personal role in discriminating or retaliating against him. Even taking as true the allegation that Baldwin personally suspended Coleman for five days, *id.* ¶ 50, there is still nothing in the Amended Complaint to tie Baldwin to any of allegations of discrimination or retaliation.

Thus, the Section 1983 claims (Counts 3, 6, and 7) as to Baldwin and Garnett are dismissed, and the dismissal is with prejudice because Coleman has already amended the complaint once, and after an unexcused delay at that. R. 23.

### 2. Due Process (Count 3)

The Defendants next seek to dismiss the Fourteenth Amendment due process claims against the four supervisors. Def. Br. at 7. As explained above, this count in its entirety will already be dismissed as to Baldwin and Garnett for lack of personal involvement. So this section will only really pertain to the due process claims against Hilliard and Dixon.

According to the Defendants, Coleman has failed to allege either a procedural due process violation or a substantive due process violation. Def. Br. at 7. To state a procedural due process claim, a plaintiff must allege (1) the deprivation of a protected interest, and (2) insufficient procedural protections in effectuating that deprivation. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). To state a substantive due process claim, a plaintiff must allege the deprivation of a fundamental interest "so deeply rooted and sacrosanct that no amount of process would justify its deprivation." *Christensen v. County of Boone, IL*, 483 F.3d 454, 462 (7th Cir. 2007). In other words, a plaintiff must allege an "abuse of governmental power so arbitrary and oppressive that it shocks the conscience." *Catinella v. County of Cook, Illinois*, 881 F.3d 514, 519 (7th Cir. 2018). Here, Coleman has failed state a claim under either due-process theory.

On the procedural due process claim, the relevant constitutional question is whether sufficient state law protections exist, not whether sufficient protections were afforded. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). In this case, the Amended Complaint itself alleges that Coleman has been provided with at least two separate opportunities to be heard—first, at the level of the employee review hearings, and after that, through the six-month-long hearing process with the Illinois Civil Service Commission. Coleman alleges generally that he "was denied any meaningful hearing on disciplinary complaints, was denied the ability to learn of the extent of the allegations against him, was denied the ability to call witnesses and was denied the ability [to] speak on his own behalf or with the assistance of counsel." Am.

12

Compl. ¶ 49. It is not clear which specific hearing Coleman is taking issue with. Either way, though, this claim fails.

To the extent that Coleman is alleging that the initial employee review hearings were constitutionally faulty, there is simply not enough in the Amended Complaint to support an inference that the hearings in this case violated Coleman's procedural due process rights. For example, Coleman alleges that he was denied the ability to learn of the allegations against him. But what does this mean? Was he literally not provided any notice that a hearing would be held on the allegations against him? Similarly, did he specifically request to call witnesses or be represented by counsel, and were those requests denied? And if so, who denied them? At the end of the day, the Amended Complaint simply does not provide enough detail about what sort of process Coleman was actually given, what he asked for, and who was involved in denying him process. So there is not enough to conclude that the employee review hearings were so meaningless or nonexistent as to rise to the level of a procedural due process violation. *See Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996). Moreover, to the extent that Coleman is alleging defects with the Illinois Civil Service Commission hearing, the fault there lies with the Civil Service Commission, not his supervisors. Without more, Coleman has failed to state a procedural due process claim against his individual supervisors.

Turning to substantive due process, the only liberty interest that Coleman identifies relates to "the well-established protections for freedom of speech and freedom of expression or association." Pl. Resp. Br. at 8. Coleman then goes on to

13

explain how the First Amendment protects those speech and associational rights. *Id.* at 8-9. He does not try to articulate any other freestanding substantive rights or allege any constitutional deprivation that rises to the level of shocking the conscience. Thus, it appears that Coleman's substantive due process claim is really just a claim that the First Amendment should be incorporated against his supervisors. But if "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (cleaned up). Under that framework, Coleman's allegations in this count should be analyzed in reference to the First Amendment, not substantive due process.

So, the procedural and substantive due-process components of Count 3 are dismissed as to all four supervisors (again, with prejudice because the complaint was amended already and in light of the delay in filing it, R. 23). But because Defendants did not address the substance of the First Amendment claims in the partial motion to dismiss, the First Amendment component of Count 3 survives as to Hilliard and Dixon only (but not Baldwin or Garnett, who lacked personal involvement).

### 3. Illinois Constitution (Count 5)

Finally, the Defendants seek to dismiss the retaliation claim under Article I, Section 2 of the Illinois Constitution, which provides: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Def. Br. at 8. According to the Defendants, though, Article I, Section 2

14

does not provide for a private right of action. *Id*. The Defendants appear to be correct. *See Teverbaugh ex rel. Duncan v. Moore*, 724 N.E.2d 225, 229 (Ill. App. Ct. 2000) ("[W]e have not identified any instance where a private action for damages was maintained directly under … article I, section 2, of the Illinois Constitution."); *see also Bonnstetter v. City of Chicago*, 2014 WL 3687539, at *6 (N.D. Ill. July 24, 2014), aff'd, 811 F.3d 969 (7th Cir. 2016).

In any event, Coleman's only response to this point is that sovereign immunity does not bar state constitutional suits against the state officials here. Pl. Resp. Br. at 9-10. That misses the mark. Because Coleman has failed to respond to the private-right-of-action argument, he has forfeited any argument on that point. *See Firestone Fin. Corp v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."). So, for that reason, the Article I, Section 2 aspect of the Illinois Constitution claim (Count 5) is dismissed with prejudice.

That being said, it is worth pointing out that Amended Complaint also mentions Article I, *Section 4* of the Illinois Constitution, which provides: "All persons may speak, write and publish freely, being responsible for the abuse of that liberty." *See* Am. Compl. ¶¶ 96, 102, 106. The partial motion to dismiss makes no argument about that aspect of the claim and whether a private right of action exists for Article I, Section 4 claims. So, for purposes of this motion, the Article I, Section 4 aspect of the claim will survive as to all four supervisors. (The personal-involvement arguments in support of dismissing Baldwin and Garnett only targeted Counts 3, 6,

15

and 7, not Count 5.) If the Defendants wish to move for early summary judgment on this point, they may file a motion to do so. When conferring on that potential motion, the Court urges Coleman to consider whether it really makes sense to bring a parallel state law retaliation claim when the First Amendment claims against Hilliard and Dixon remain intact and the personal involvement of Baldwin and Garnett seems non-existent.

## IV. Conclusion

For the reasons stated above, the partial motion to dismiss is granted. To sum up, the following claims are dismissed with prejudice:

- Count 1 (Title VII) against the State of Illinois;
- Count 2 (IHRA) against all Defendants;
- Count 3 (First Amendment) against Baldwin and Garnett;
- Count 3 (Due Process) against all Defendants;
- Count 4 (ADEA) against the State of Illinois;
- Count 5 (Art. I § 2 of the Illinois Constitution) against all Defendants;
- Count 6 (Equal Protection) against Baldwin and Garnett; and
- Count 7 (Retaliation) against Baldwin and Garnett.

That just leaves the claims not targeted by the partial motion to dismiss. Specifically, the following claims survive:

- Count 1 (Title VII) against the IDOC;
- Count 3 (First Amendment) against Dixon and Hilliard;
- Count 4 (ADEA) against the IDOC;

- Count 5 (Art. I § 4 of the Illinois Constitution) against all Defendants;

- Count 6 (Equal Protection) against Dixon and Hilliard; and

- Count 7 (Retaliation) against Dixon and Hilliard.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 16, 2020